STATE, EX REL. HAINES, V. CHESTER TOWNSHIP (BD. OF ED.).

1. NO IMPERATIVE DUTY ON TOWNSHIP BOARD OF EDUCATION TO PURCHASE SITE—NECESSITY MAY BE RECONSIDERED.

No imperative duty rests upon the township board of education, under the act of April 16, 1900 (94 O. L. 317; Sec. 3927-1 Rev. Stat. *et seq.*), to purchase a site and erect a school building until after a determination by the board of a necessity therefor, and such finding may be reconsidered by the board or its successor, subject only to existing contract rights.

2. CENTRALIZATION OF TOWNSHIP SCHOOLS AN IMPERATIVE DUTY.

The centralization of the township schools is a duty imperatively imposed upon the township board of education under act of April 16, 1900 (Sec. 3927-1 Rev. Stat. *et seq.*).

3. REMEDY FOR IMPAIRMENT OF CONTRACTS BY CHANGE IN CENTRALIZATION.

The remedy of a contractor having a valid contract with the township board of education for an impairment of his contract rights by reason of a change made in good faith in the centralization of the township schools, is an action at law.

4. INJUNCTION NOT PROPER REMEDY—JOINT SUBDISTRICTS NOT ABOLISHED BY VOTE FOR CENTRALIZATION.

Injunction is not an appropriate remedy to restrain a township board of education from maintaining separate schools in one joint subdistrict, although there has been a vote in favor of centralization. Such vote does not, under

Sec. 3927-1 Rev. Stat., *ipso facto* abolish joint subdistricts, but subdistricts only. The proper remedy, if any exists, is by mandamus to compel the board to include joint subdistricts in the centralization.

D. B. Van Pelt and Smith & Clevenger, for the relators.

Thorpe & Miller, A. E. Clevenger and L. J. Walker, for defendants.

GIFFEN, J.

As we construe the act of April 16, 1900 (94 O. L. 317), we think counsel for relators lay too great stress upon the imperative duty of the board of education to purchase a site and erect a suitable building thereon. It is only when the board deems it *necessary* to purchase a site and erect a building thereon that the act requires them to do so, and there is nothing in the act itself preventing the original board, before the building is erected or commenced, from reconsidering the action taken, and resolving to centralize the schools not in one but in two places. It may have made a mistake in the first instance, and the very discretion vested in it by the act carries with it the power and duty to correct that mistake.

If the original board may reconsider its action in this respect, then its successor, being clothed with all the powers of the old board, may exercise them, with a like discretion, subject, however, to the rights of a party to any contract the former board may have made. It may be said that successive boards may thus undo all that their predecessors have done, prevent the centralization of the schools, and ultimately defeat the will of the people; but it is only the natural result of our elective system of government and is in reality the expression of the will of the people through its chosen representatives. Such boards cannot legally refuse to centralize the schools because the law makes this duty imperative, but the mode and manner of performing it is discretionary, and if the duty is not performed by the old board such discretion is vested in its successor. If the building contractor has a valid contract, his remedy is an action at law, and so long as the present board of education is proceeding in good faith to centralize the schools of the township, its discretion with respect to the manner of doing it cannot be controlled by the extraordinary writ of mandamus, although its judgment may be faulty. While the purchase of a site is an incident of the centralization of the schools, it is not necessarily included in that term as defined by Sec. 1 of the act of the general assembly, and being effected by the predecessor of the incumbent board, each possessing like authority in the premises, it does not come within the principle announced nor the statute construed in the case of Moss v. Board of Education, 58 Ohio St. 354 [50 N. E. Rep. 921]. We are of the opinion, therefore, that the action of the present board in proceeding

to centralize the schools in two places ·within the township district, whether wise or unwise, if done in good faith, cannot be prevented by mandamus.

The hostility of the board to centralization, its dilatory action in effecting it, and the appropriation of $1,000 for the expenses of litigation, may be open to just criticism, but do not warrant a finding that it acted in such bad faith as to require this court to interpose by writ of mandamus. The relators, by an amendment to the position, seek to enjoin the defendant board from maintaining separate schools in the joint subdistricts which are under the control of the board of education of Chester township. In the case of Harlan v. Board of Education, unreported, it was not necessary, nor did this court decide, that such joint subdistricts were abolished by the vote for centralization. Section 3927-1 Rev. Stat. provides in express terms for the abolishment of subdistricts only, and whatever doubt may have existed as to whether joint subdistricts were, by implication, included in the term subdistricts has been removed by Sec. 3927-5 Rev. Stat., as amended May 12, 1902 (95 O. L. 649). Besides, if the board of education is required by law to include joint subdistricts in centralizations, they could be compelled to do so by mandamus under the original petition, and injunction would not be an appropriate remedy. The object of mandamus is to compel performance, while the office of injunction is to restrain.

The injunction and mandamus will each be refused.

Judge Giffen does not concur in the finding that the joint subdistricts are not abolished.

---

## BILLS AND NOTES—EVIDENCE.

[Lucas (6th) Circuit Court, October 31, 1903.]

Parker, Hull and Haynes, JJ.

CHARLES E. TUCKER V. JOHN HENDRICKS.

1. WHETHER GIVING OF NOTE WAS IN PAYMENT OF DEBT FOR JURY, WHEN.

Where a debtor attempts to satisfy a claim by the giving of his note for the amount thereof, which note was taken by the creditor, it is a question for the jury whether the note was accepted in payment of the claim.

2. WITNESS MAY TESTIFY AS TO HIS INTENTION, WHEN.

Where intent is material, it is proper to ask a witness what his intention was with reference to the matter in hand.

3. INNOCENT ALTERATION OF NOTE WITHOUT PLAINTIFF'S CONSENT DOES NOT BAR ACTION UPON ORIGINAL CLAIM, WHEN.

A note drawing six per cent., given in satisfaction of a claim, was deposited by the payee in bank and placed to his credit. Some officer of the bank,